IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-02847-PAB-SBP

LOREN ALVAREZ, on behalf of herself and all others similarly situated,

      Plaintiff,

v.

TTEC SERVICES CORPORATION,

      Defendant.

---

**ORDER**

---

This matter comes before the Court on Plaintiff's Motion to Stay Briefing on Defendant's Motion to Compel Arbitration Until After a Decision on Plaintiff's Motion for Conditional Collective Action Certification and Judicial Notice and the Completion of Any Ensuing Notice Period [Docket No. 29] and Defendant's Motion to Stay Briefing on Plaintiff's Motion for Conditional Certification [Docket No. 31].

On March 3, 2025, defendant TTEC Services Corporation ("TTEC") filed a response to plaintiff Loren Alvarez's motion to stay.  Docket No. 33.  That same day, Ms. Alvarez filed a response to TTEC's motion to stay.  Docket No. 32.  On March 10, 2025, Ms. Alvarez and TTEC filed replies in support of their respective motions to stay.  Docket Nos. 35, 36.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.    BACKGROUND

On October 15, 2024, Ms. Alvarez filed this action, on behalf of herself and all others similarly situated, against TTEC.  Docket No. 1.  She brings claims under (1) the

Fair Labor Standards Act (the "FLSA"), (2) the Virginia Overtime Wage Act, and (3) the Virginia Wage Payment Act for unpaid wages. *Id.* at 15-20. Ms. Alvarez "brings this action as a 'hybrid' class and collective action for unpaid overtime under both federal and state law" pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23. *Id.* at 1, ¶ 2.

On December 6, 2024, TTEC filed a motion to compel arbitration and to dismiss the case or to stay the case pending arbitration. Docket No. 13. That same day, Ms. Alvarez filed a motion to conditionally certify a collective action pursuant to the FLSA. Docket No. 14. On January 28, 2025, the magistrate judge approved the parties' proposed briefing schedule on these motions. Docket No. 28. Pursuant to the scheduling order, the response and reply deadlines to TTEC's motion to compel arbitration and Ms. Alvarez's motion for conditional certification were stayed until the motions to stay were resolved. *Id.* at 2, ¶ 5. The magistrate judge ordered that "[t]he parties will enter or have entered into a tolling agreement to ensure that the claims of putative opt-in plaintiffs are tolled during the pendency of all above motions." *Id.,* ¶ 7.

## II.  LEGAL STANDARD

### A.  **Motion to Stay**

A court may enter a stay of proceedings incidental to its inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Springmeadows Condo. Ass'n v. Am. Family Mut. Ins. Co.*, No. 14-cv-02199-CMA-KMT, 2014 WL 7005106, at *1 (D. Colo. Dec. 9, 2014) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)). However, the Tenth Circuit has cautioned that "the right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Comm'n v.*

2

*Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983) (citation omitted).

Stays of all proceedings in a case are thus "generally disfavored in this District" and are

considered to be "the exception rather than the rule." *Davidson v. Bank of Am. N.A.*,

No. 14-cv-01578-CMA-KMT, 2015 WL 5444308, at *1 (D. Colo. Sept. 16, 2015). A stay

may, however, be appropriate in certain circumstances. Courts in this district consider

the following factors (the "*String Cheese Incident* factors") in determining whether a stay

is appropriate: (1) the non-moving party's interests in proceeding expeditiously with the

civil action; (2) the burden on the moving party in proceeding; (3) the convenience to the

court; (4) the interests of persons not parties to the civil litigation; and (5) the public

interest. *Howell v. Gate Gourmet, Inc.,* No. 24-cv-00633-RMR-KAS, 2024 WL 5055585,

at *2 (D. Colo. June 19, 2024) (citing *String Cheese Incident, LLC v. Stylus Shows, Inc.*,

No. 05-cv-01934-LTB-PAC, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006); *Bank of

Colo. v. Wibaux 1, LLC*, No. 17-cv-02871-CMA-KMT, 2018 WL 2562662, at *3-4 (D.

Colo. June 4, 2018)).

### B. Conditional Certification

Title 29 U.S.C. § 216(b) of the FLSA provides in pertinent part:

> Any employer who violates the provisions of . . . section 207 of this title shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages . . . An action to recover the liability prescribed in [section 207] may be maintained against any employer . . . in any Federal . . . court of competent jurisdiction by any one or more employees *for and in behalf of himself or themselves and other employees similarly situated*.

29 U.S.C. § 216(b) (emphasis added). There is a two-step approach for determining

whether plaintiffs are "similarly situated" for purposes of FLSA collective action

certification. *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).[1]  A

court's initial certification comes at the notice stage, where courts determine whether

plaintiffs are similarly situated for purposes of sending notice to putative collective

members. *Id.* at 1102.  Plaintiff is required to provide "nothing more than substantial

allegations that the putative class members were together the victims of a single

decision, policy or plan."  *Id.*; *see also Stransky v. HealthONE of Denver, Inc.*, No. 11-

cv-02888-WJM-MJW, 2012 WL 6548108, at *4 (D. Colo. Dec. 14, 2012).  This is a

"lenient" standard, *Baldozier v. Am. Family Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092

(D. Colo. 2005), "which typically results in conditional certification of a representative

class."  *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007).

The second stage, which comes at the conclusion of discovery, applies a stricter

standard of "similarly situated," including application of at least four factors, to determine

whether the case can proceed as a collective action.  *Thiessen*, 267 F.3d at 1102-03.

## III.    ANALYSIS

### A.    Ms. Alvarez's Motion to Stay

Ms. Alvarez moves to stay briefing on TTEC's motion to compel arbitration until

the Court rules on Ms. Alvarez's motion for conditional certification of the collective

under the FLSA.  Docket No. 29 at 5.  Ms. Alvarez argues that the issue of whether

putative collective members are subject to arbitration agreements should be raised at

---

[1] *Thiessen* involved a collective action under the Age Discrimination in
Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.  Because the ADEA adopts the
collective action mechanism set forth in FLSA § 216(b), courts apply *Thiessen* to FLSA
collective actions.  *See Kaiser v. At The Beach, Inc.*, 2010 WL 5114729, at *4 n.9 (N.D.
Okla. Dec. 9, 2010); *see also Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 679
(D. Kan. 2004).

the second stage of the collective certification analysis and not at the first stage. *Id.* at 8-10. She contends that the *String Cheese Incident* factors weigh in favor of granting a stay. *Id.* at 11-13. As an alternative to staying briefing on TTEC's motion to compel arbitration, Ms. Alvarez requests that the Court deny TTEC's motion to compel arbitration without prejudice, to be refiled at the second stage of the collective certification analysis. *Id.* at 13.

TTEC responds that the Court is not required to stay consideration of TTEC's motion to compel arbitration until the second stage of the collective certification analysis. Docket No. 33 at 2-3. TTEC argues that the objectives of the Federal Arbitration Act (the "FAA"), as well as Colorado and Virgina law, favor consideration of a motion to compel arbitration before the second stage of the collective certification analysis. *Id.* at 3-5. TTEC contends that Ms. Alvarez's claims are subject to arbitration and that the *String Cheese Incident* factors weigh against granting Ms. Alvarez's motion to stay. *Id.* at 5-9. TTEC states that, even if TTEC were to provide limited discovery as necessary for the Court to decide TTEC's motion to compel arbitration, it is more efficient to rule on TTEC's motion to compel arbitration before deciding the issue of collective certification. *Id.* at 10.

As an initial matter, the Court will address Ms. Alvarez's contention that, pursuant to the Tenth Circuit approach to FLSA collective action certification, TTEC's motion to compel arbitration is premature because the Court has not yet conditionally certified an FLSA collective for purposes of providing notice to putative collective members. *See* Docket No. 29 at 7-11. It is true that the "the issue of whether putative class members are subject to arbitration agreements should be raised at the second stage of the

certification analysis." *Judd v. KeyPoint Gov't Sols., Inc.*, No. 18-cv-00327-RM-STV,

2018 WL 4383037, at *12 (D. Colo. July 30, 2018), *report and recommendation*

*adopted*, 2018 WL 7142193 (D. Colo. Dec. 4, 2018).  However, here, TTEC does not

seek to compel arbitration of putative collective members' claims, but rather seeks to

compel arbitration of the representative plaintiff's claims.  *See* Docket No. 13 at 12-19.

The cases cited by Ms. Alvarez are inapposite because the defendants in such cases

did not move to compel arbitration of the representative plaintiff's claims.  *See* Docket

No. 29 at 7-10.

Ms. Alvarez contends that TTEC's allegation that "the named Plaintiff signed an

arbitration agreement does not change the analysis" because "no discovery on the

matter has been taken and it has not been established that any agreement the named

Plaintiff may or may not have signed is enforceable or valid."  *Id.* at 10.  Ms. Alvarez

cites *Beattie v. TTEC Healthcare Sols., Inc.*, No. 18-cv-03098-RM-NRN, 2019 WL

2866559, at *2 (D. Colo. July 3, 2019), for the proposition that "arbitration agreements

signed by the two named Plaintiffs did not prevent the court from ruling on, and

granting, the named Plaintiffs' motion for conditional collective action certification."  *Id.*

at 11.  However, as Ms. Alvarez notes, *"Beattie* involved numerous opt-ins at the time it

was decided."  *Id.*  In ruling on the plaintiffs' motion for conditional certification of the

collective, *Beattie* found that, "as this Court recently concluded in another case, '[t]he

fact that claims *not presently before the Court* may be ordered to arbitration at a later

date does not require that notice be withheld from potential members of the collective

under the FLSA's long-established procedures for doing so, merely because some

members signed an arbitration agreement.'"  *Beattie*, 2019 WL 2866559, at *1

(emphasis added) (quoting *Judd*, 2018 WL 7142193, at *6).

By contrast, here, TTEC moves to compel the arbitration of Ms. Alvarez's claims,

which are presently before the Court.  Because Ms. Alvarez is the representative

plaintiff, if the Court were to grant TTEC's motion to compel arbitration, she would lack

"any personal interest in prosecuting this action in this Court on behalf of others who

have yet to opt in" and her motion for conditional certification would be denied as moot.

*See Dixon v. NBCUniversal Media, LLC*, 947 F. Supp. 2d 390, 405-06 (S.D.N.Y. 2013)

(denying plaintiff's motion for conditional certification of the FLSA collective as moot

because she agreed to arbitrate her claims) (citing *Genesis Healthcare Corp. v.

Symczyk*, 569 U.S. at 66, 72-73 (2013)); *cf. Ferrell v. SemGroup Corp.*, 2020 WL

6561312, at *2 (N.D. Okla. Nov. 9, 2020) (noting that the representative plaintiff's claim

was not "moot" because the "court denied [the defendants'] efforts to compel arbitration

of the claim, which would have divested this court of jurisdiction"); *Genesis Healthcare

Corp.*, 569 U.S. at 73 ("While the FLSA authorizes an aggrieved employee to bring an

action on behalf of himself and other employees similarly situated, the mere presence of

collective-action allegations in the complaint cannot save the suit from mootness once

the individual claim is satisfied.") (internal quotation and citation omitted).  Therefore,

the Court rejects Ms. Alvarez's argument that the Court should rule on TTEC's motion to

compel arbitration at the second stage of the FLSA collective certification analysis in

light of TTEC moving to compel arbitration of the sole representative plaintiff's claims.

The Court finds that the *String Cheese Incident* factors weigh against granting

Ms. Alvarez's motion to stay.  As to the first factor, TTEC has an interest in proceeding

expeditiously, as evidenced by it opposing Mr. Alvarez's stay and TTEC's prompt filings, which weighs against granting Ms. Alvarez's motion to stay. The Court further finds that TTEC's motion to compel arbitration raises jurisdictional issues, which TTEC has an interest in resolving expeditiously. *See Howell,* 2024 WL 5055585, at *2 (finding that the first *String Cheese Incident* factor weighed against granting the plaintiff's motion to stay because the "Defendant vehemently opposes [plaintiff's motion] in the interest of a ruling on its Motion to Dismiss for Lack of Jurisdiction" and where the motion "raise[d] threshold jurisdictional issues"); *Bank of Colorado,* 2018 WL 2562662, at *3 (finding that the first *String Cheese Incident* factor weighed against granting the defendant's motion to stay because the plaintiff "opposes a stay, and assumes, given the [plaintiff's] prompt filings and its Response, that the [plaintiff] wishes to proceed expeditiously with its case") (internal citation omitted).

As to the second factor, the burden on both parties is that they will have to brief Ms. Alvarez's motion for conditional collective certification and TTEC's motion to compel arbitration. However, "briefing will not impose any undue burden on any party," *Howell*, 2024 WL 5055585, at *2, because the time of counsel "in responding to the motion is not so special as to warrant a stay. . . . [I]nvesting time to respond to a motion is an ordinary burden of litigating a case." *Bank of Colorado*, 2018 WL 2562662, at *4. Therefore, the second factor weighs against a stay.

As to the third factor, a "pause on briefing of the jurisdictional issues raised" in TTEC's motion to compel arbitration weighs against a stay. *Howell*, 2024 WL 5055585, at *2. The Court is inconvenienced by a stay where it will result in "a pause on briefing of the jurisdictional issues." *Id.* As discussed previously, TTEC's motion to compel

arbitration, if granted, would divest the Court of jurisdiction during the pendency of the arbitration.  It is an issue that needs to be resolved sooner rather than later.

As to the fourth factor, the Court will consider the interests of the putative members of the collective.  Ms. Alvarez argues that "putative opt-ins" would be prejudiced by "denying them notice of their FLSA right while the clock potentially runs and their claims potentially become extinguished."  Docket No. 29 at 12.  She asserts that the putative collective members have an interest in receiving "timely notice of their rights."  *Id.* at 13.  The Court finds that Ms. Alvarez's argument – that the putative collective members' interests would be harmed absent a stay – is speculative and may have been mooted.  On January 28, 2025, the magistrate judge granted the parties' joint motion to enter a briefing schedule on the parties' competing motions to stay. Docket No. 28.  In the January 28, 2025 order, the magistrate judge stated that the parties "will enter or have entered into a tolling agreement to ensure that the claims of the putative opt-in plaintiffs are tolled during the pendency of all the above motions" discussed in the order.  *Id.* at 2, ¶ 7.  Furthermore, TTEC has represented that "to address any alleged prejudice to potential opt-in plaintiffs, Defendant will agree to a reasonable stipulation in line with the Court's order for a tolling agreement regarding the claims of putative opt-ins during the pendency of the parties' motion to stay."  Docket No. 33 at 7.  Therefore, the Court finds that the fourth factor weighs against a stay.

As to the fifth factor, "the public has a general interest in the speedy resolution of legal disputes, which co-exists with a strong public policy in avoiding unnecessary expenditures of public and private resources on litigation."  *Howell*, 2024 WL 5055585, at *3 (internal quotations and citations omitted).  The public interest in the speedy

resolution of legal disputes weighs against a stay.  If the Court were to grant Ms.

Alvarez's motion to stay, then "incomplete briefing . . . will delay a ruling as to whether

this dispute should be litigated or arbitrated."  *Id.*  While counsel for Ms. Alvarez will

have to brief TTEC's motion to compel arbitration, as discussed above, the time spent

by counsel in briefing is not a concern that outweighs the fact that stays are "generally

disfavored in this District" and are considered to be "the exception rather than the rule."

*Davidson*, 2015 WL 5444308, at *1.  Therefore, the Court finds that the fifth factor

weighs against a stay.  *Id.*

All the *String Cheese Incident* factors weigh against a stay in briefing on TTEC's

motion to compel arbitration.  Accordingly, the Court will deny Ms. Alvarez's motion for a

stay.

### B.  TTEC's Motion to Stay

TTEC moves to stay briefing on Ms. Alvarez's motion for conditional collective

action certification until the Court rules on TTEC's motion to compel arbitration.  Docket

No. 31 at 2.  TTEC argues that the Tenth Circuit does not require that the Court rule on

Ms. Alvarez's motion for conditional collective action certification before ruling on

TTEC's motion to compel arbitration.  *Id.*  TTEC contends that there is good cause to

grant TTEC's motion to stay because the *String Cheese Incident* factors weigh in favor

of a stay.  *Id.* at 3-7.  TTEC notes that, in order to address Ms. Alvarez's "concerns

regarding the statute of limitations," TTEC "will agree to a reasonable stipulation in line

with the Court's order for a tolling agreement regarding the claims of the putative opt-ins

during the pendency of the parties' motions to stay."  *Id.* at 7.  Ms. Alvarez responds that

issues as to the arbitrability of putative collective members' claims should be decided at

the second stage of the collective certification analysis.  Docket No. 32 at 7-13.  She argues that the *String Cheese Incident* factors weigh against granting TTEC's motion to stay.  *Id.* at 14-16.

As discussed above, the Court does not have to reserve ruling on TTEC's motion to compel arbitration until the second stage of the collective certification analysis because TTEC moves to compel arbitration of the sole representative plaintiff's claims, and there are no other opt-in plaintiffs.  Nonetheless, the Court finds that *String Cheese Incident* factors weigh against granting TTEC's motion to stay.

As to the first factor, the burden imposed on TTEC absent the stay is that it must brief Ms. Alveraz's motion for conditional collective certification, with the possibility that the Court would grant TTEC's motion to compel arbitration and thus moot the motion for conditional collective certification.  However, as discussed above, the time of counsel "in responding to the motion is not so special as to warrant a stay. . . .  [I]nvesting time to respond to a motion is an ordinary burden of litigating a case."  *Bank of Colorado*, 2018 WL 2562662, at *4.  Furthermore, Ms. Alvarez has indicated a desire to proceed expeditiously with her case.  *See id.* at *3 (finding that the first *String Cheese Incident* factor weighs against granting the defendant's motion for a stay because the plaintiff "opposes a stay, and assumes, given the [plaintiff's] prompt filings and its Response, that the [plaintiff] wishes to proceed expeditiously with its case") (citation omitted).

TTEC further argues that "discovery could pose an undue burden when a motion to dismiss might dispose of a case in its entirety."  Docket No. 31 at 4.  However, TTEC has not moved to stay discovery.  TTEC has moved to "stay all briefing on the Conditional Certification Motion until the Motion to Compel is decided."  *Id.* at 2.

Furthermore, the magistrate judge ordered that the "competing motions to stay briefing will focus exclusively on the issue of the timing for the decisions on the substance of Plaintiff's Motion for Conditional Collective Action Certification and Defendant's Motion to Compel Arbitration, respectively."  Docket No. 28 at 2, ¶ 4.  Moreover, the parties have not had a scheduling conference, there is no scheduling order,[1] and thus no discovery plan.  There is no indication on the record that the parties have exchanged discovery or have had a conference pursuant to Fed. R. Civ. P. 26(f).  To the extent that TTEC seeks to stay discovery, it must do so in a separate motion that will be referred to the magistrate judge.  Until such time, any burden that TTEC would face due to the demands of discovery is speculative.  Accordingly, the second factor weighs against granting a stay.

As to the third factor, a court is "inconvenienced by an ill-advised stay because the delay in prosecuting the case which results from imposition of a stay makes the Court's docket less predictable and, hence, less manageable."  *Lester v. Gene Exp., Inc.*, No. 09-cv-02648-REB-KLM, 2010 WL 743555, at *2 (D. Colo. Mar. 2, 2010).  The stay proposed by TTEC is particularly burdensome to the Court because "the stay is tied to a pending motion on which ultimate success is not guaranteed."  *Id.*  Under TTEC's proposed stay, if the Court denies TTEC's motion to compel arbitration, the Court would have to delay ruling on Ms. Alvarez's motion for conditional certification of

---

[1] On January 2, 2025, the parties moved to vacate the January 2, 2025 deadline to file a proposed scheduling order and to extend the deadline until after the Court issued its ruling on the competing motions to stay.  Docket No. 18 at 2.  The magistrate judge granted the parties' motion and vacated the January 2, 2025 deadline.  Docket No. 19.

the collective until the parties fully brief Ms. Alvarez's motion.  Therefore, the third factor
weighs against a stay.

As to the fourth factor, the Court finds that, as discussed previously, Ms.
Alvarez's contention that the interests of putative collective members would be harmed
if the Court were to either deny Ms. Alvarez's motion to stay or grant TTEC's motion to
stay is speculative.  Moreover, because the Court will deny TTEC's motion to stay, the
Court finds that any potential harm to putative collective members' claims, due to delay
in sending out notice, is minimized.

TTEC argues that putative opt-in plaintiffs' interests would be served by granting
TTEC's motion to stay.  Docket No. 31 at 6.  TTEC contends that "allowing putative opt-
in plaintiffs to receive notice of a lawsuit that is subsequently sent to *individual*
arbitration creates unnecessary confusion" and that "a stay of discovery would protect
these third-parties from discovery requests and subpoenas."  *Id.* (quoting *Robertson v.
REP Processing, LLC*, No. 19-cv-02910-PAB-NYW, 2020 WL 12630544, at *4 (D. Colo.
Mar. 5, 2020)) (alterations omitted).  As discussed previously, TTEC has not moved for
a stay of discovery.  Furthermore, the Court rejects TTEC's argument that a stay on
briefing Ms. Alvarez's motion for conditional certification of the collective is required to
avoid "unnecessary confusion."  The Court can avoid creating "unnecessary confusion"
by ruling on TTEC's motion to compel arbitration first.  If the Court grants TTEC's
motion to compel arbitration, it would render Ms. Alvarez's motion for conditional
collective certification moot.  On the other hand, if the Court denies TTEC's motion to
compel arbitration, it would then rule on Ms. Alvarez's motion for conditional collective
certification.  Therefore, the fourth factor weighs against granting a stay.

As to the fifth factor, as discussed previously, the general public interest in the "speedy resolution of legal disputes" weighs against a stay.  *Howell*, 2024 WL 5055585, at *3.  TTEC argues that staying briefing on Ms. Alvarez's motion for conditional collective certification until the Court rules on TTEC's motion to compel arbitration would serve the general public interest because "permitting extensive discovery to continue on the class action claims that would ultimately be barred upon the court granting a pending Motion to Compel Arbitration would undermine the strong federal policy favoring arbitration for dispute resolution."  Docket No. 31 at 7 (quoting *Robertson*, 2020 WL 12630544, at *13) (internal quotation omitted).  Again, TTEC has not moved to stay discovery.  Moreover, TTEC's concern that there will be "extensive discovery" on claims that are ultimately subject to arbitration is addressed by the fact that Court will consider TTEC's motion to compel arbitration before turning to Ms. Alvarez's motion for conditional collective certification.

All the *String Cheese Incident* factors weigh against a stay in briefing on Ms. Alvarez's motion for conditional collective action certification until the Court rules on TTEC's motion to compel arbitration.  Accordingly, the Court will deny Ms. Alvarez's motion for a stay.

## IV.    CONCLUSION

Therefore, it is

**ORDERED** that Plaintiff's Motion to Stay Briefing on Defendant's Motion to Compel Arbitration Until After a Decision on Plaintiff's Motion for Conditional Collective Action Certification and Judicial Notice and the Completion of Any Ensuing Notice Period [Docket No. 29] is **DENIED**.  It is further

**ORDERED** that Defendant's Motion to Stay Briefing on Plaintiff's Motion for

Conditional Certification [Docket No. 31] is **DENIED**.


DATED June 2, 2025.

BY THE COURT:

s/ Philip A. Brimmer_____

PHILIP A. BRIMMER
Chief United States District Judge