**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO**

| | |
|---|---|
| **LOREN ALVAREZ,** on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**TTEC SERVICES CORPORATION,**<br><br>Defendant. | No. 1:24-cv-02847-SP<br><br>Magistrate Judge Susan Prose |

**DEFENDANT'S MOTION TO COMPEL ARBITRATION WITH LAMIS BAKER
AND TO DISMISS HER FROM THE CASE UNDER FED. R. CIV. PROC. 12(b)(6)**

**I.   INTRODUCTION**

Opt-in plaintiff Lamis Baker ("Ms. Baker") is a former employee of TTEC Government Solutions, LLC ("Government Solutions"). Ms. Baker entered into an agreement with Government Solutions to arbitrate all employment-related claims, and to do so on an individual basis. She instead opted into a Collective and Class Action Complaint (the "Complaint"), which asserts collective allegations under the Fair Labor Standards Act ("FLSA") and class allegations under the Virginia Overtime Wage Act and Virginia Wage Payment Act under Federal Rule of Civil Procedure 23 ("Rule 23") against TTEC Services Corporation ("TTEC"). ECF 1.

There is no basis for Ms. Baker's inclusion in this case. As a threshold matter, Ms. Baker is not a proper plaintiff in this case because her employment was with Government Solutions—not the named defendant, TTEC. Accordingly, even if the opt-in plaintiff's allegations are true, they fail to establish a legal claim against the named defendant, and

Ms. Baker should be dismissed from this case pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

Furthermore, Ms. Baker entered into a valid agreement to arbitrate any dispute arising out of or in connection with any aspect of her employment with Government Solutions, so any such claims would fall within the bounds of her arbitration agreement and must be resolved by binding arbitration. Accordingly, this Court lacks jurisdiction over Ms. Baker's claims and must dismiss her as an opt-in plaintiff under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and compel arbitration consistent with the Arbitration Agreement and the application of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"). Ms. Baker also cannot proceed with a class or collective action in any case because Ms. Baker and Government Solutions expressly waived the ability to participate in either type of action against each other. TTEC requests this Court enter an order (i) compelling individual arbitration between Government Solutions and Ms. Baker and (ii) dismissing Ms. Baker from this case.

## II.     BACKGROUND

TTEC is an American customer experience technology and services company headquartered in Greenwood Village, Colorado. ECF 41-1, Declaration of Gretchen Pfeifer ("Pfeifer Decl.") ¶ 2. TTEC provides customer service support to various company clients through employees who either work at customer care contact centers or work remotely around the country. *Id*.

Government Services, a TTEC affiliate, similarly offers authorized contact center solutions, but for federal, state, and local agencies in sectors that include transportation,

tolling, and other government operations. Its principal place of business is located in Austin, Texas.

### A. Ms. Baker entered into a valid arbitration agreement.

Ms. Baker worked for Government Solutions as a Business Processing Outsourcing Representative (Tier 1) from her home near Houston, Texas. *Id*. ¶ 7. During the TTEC hiring and onboarding process, on May 28, 2024, Ms. Baker reviewed, completed, and signed the Arbitration Agreement through her individual Taleo Account. *Id*. ¶¶ 10-11.

To view and sign the Arbitration Agreement, Ms. Baker logged in to her individual Taleo account using her username and unique password that she created. *Id*. ¶ 11. The Taleo system required Ms. Baker to electronically accept the Arbitration Agreement by typing in her full name and a unique identifier that ensured that she was the one who accepted the agreement. *Id*. ¶ 10. The eSignature page is named and coded within Taleo as "eSignature_United_States". *Id*. Government Solutions gave Plaintiff as much time as she wished to read, reread, and consider the Arbitration Agreement before agreeing to arbitration. *Id*. ¶ 9. Ms. Baker was also advised in writing and encouraged to review the Arbitration Agreement with legal counsel of her choosing. *Id*. Ms. Baker entered her full name and unique identifier, thereby entering into the Arbitration Agreement. *Id*. ¶ 10. TTEC has no information suggesting that Ms. Baker was not the individual who used her username and unique password to access Taleo and electronically accept the Arbitration Agreement. *Id*. ¶ 11. In addition, the Taleo system produced electronic records that list the date of acceptance, time of acceptance, and unique identifier that Plaintiff used to

accept the Arbitration Agreement, as well as the IP address indicating the location from which the agreement was signed. *Id*. ¶ 11, Ex. C.

      **B.    Ms. Baker agreed to individually arbitrate all claims brought in this lawsuit.**

The Arbitration Agreement between Government Solutions and Ms. Baker states in pertinent part: "[T]he Parties agree to arbitrate all disputes arising out of or relating to their employment relationship…" Exhibit A to Pfeifer Decl., Arbitration Agreement ("Arb. Agmt.") ¶ 1.2. Ms. Baker further agreed "to bring any dispute in arbitration on an individual basis only, and not on a class and/or collective basis." *Id*. ¶ 1.4. Finally, the Arbitration Agreement's definition of "covered disputes" explicitly includes "wages, bonuses, commissions … and minimum wage and overtime or other compensation or any other monies claimed to be owed … and claims arising under the … Fair Labor Standards Act … and state and local statutes or regulations addressing the same or similar subject matters". *Id*. ¶ 4.1. Ms. Baker nevertheless has tried to opt into this collective and class action.

**III.    ARGUMENT**

      **A.    Standard of review under Rule 12.**

The Court should dismiss this case under Rule 12(b)(1) because it lacks subject matter jurisdiction to adjudicate Ms. Baker's claims in light of her Arbitration Agreement. Under Rule 12(b)(1), the party asserting jurisdiction—in this case, the above-captioned plaintiff, Loren Alvarez ("Plaintiff") and those purporting to be similarly situated—bears the burden of proving jurisdiction to survive this motion. *Douglas Smith Builders LLC v. State Farm Fire & Cas. Co.*, No. 22-CV-01722-RM-SBP, 2024 WL 3520712, at *1 (D. Colo. July 24, 2024). If it is determined that the claims underlying this case are subject to a valid

arbitration provision, the court no longer retains jurisdiction, and the claims should be dismissed. *See, e.g.*, *Spencer v. TICI LLC*, No. 22-CV-02464-RM-KLM, 2023 WL 2806856, at *3 (D. Colo. Apr. 6, 2023) (citing *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006)).

     **B.**     **Governing Policy Strongly Favors Arbitration**

           **1.**     **The FAA applies.**

Ms. Baker's claims must be compelled to arbitration, as mandated by the FAA. Not only does the FAA express a strong federal policy in favor of arbitration where a written arbitration agreement exists, it compels the enforcement of a written arbitration agreement if it "evidence[es] a transaction involving interstate commerce." 9 U.S.C. § 2. The FAA represents "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). It provides, in pertinent part: "A written provision … to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable …" 9 U.S.C. § 2. Specifically, "arbitration agreements are favored and are to be broadly construed with doubts being resolved in favor of coverage." *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 332 (10th Cir. 1993). Pursuant to this policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25. Section 4 of the FAA expressly authorizes "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition [the court] . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

The Supreme Court recently reaffirmed that the FAA is "[a]n enforcement mandate, which renders agreements to arbitrate enforceable as a matter of federal law…" *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650 (2022). Arbitration is a matter of contract. "[C]ourts must 'rigorously enforce' arbitration agreements according to their terms, including terms that 'specify with whom [the parties] choose to arbitrate their disputes' and 'the rules under which that arbitration will be conducted." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). Applying the FAA in the employment context, the Supreme Court reiterated a strong public policy in favor of arbitration: "Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts." *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001). The FAA "preempts any state rule discriminating on its face against arbitration—for example, a law 'prohibit[ing] outright the arbitration of a particular type of claim.'" *Viking River*, 596 U.S. at 650 (quoting *Kindred Nursing Centers Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017)).

The Arbitration Agreement expressly states, "This Agreement is governed by the Federal Arbitration Act…" Arb. Agmt. "Recitals." Given that the FAA promotes a "liberal policy favoring arbitration," and that "courts must place arbitration agreements on equal footing with other contracts… and enforce them according to their terms," arbitration is mandatory here. Even without the explicit contractual reference, the FAA applies by its terms to arbitration provisions in any contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. The U.S. Supreme Court has interpreted this language as signaling "an intent to exercise Congress' commerce power to the full." *See Allied-Bruce*

*Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995); *see also Cir. City Stores*, 532 U.S. at 124 (arbitration agreements between local employees and nationwide companies are subject to the FAA). Government Solutions is a nationwide telecommunications company whose operations plainly affect interstate commerce within the meaning of the FAA. Thus, Ms. Baker's employment relationship with Government Solutions "involved commerce" under the FAA.

### 2. Texas and Colorado policy strongly favor arbitration.

Even if the FAA does not apply, which TTEC does not concede, the Arbitration Agreement should be liberally construed and enforced pursuant to Texas law (where Plaintiff worked, and where Government Solutions has its principal place of business). *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001) ("[T]he law favors arbitration[.]"). It is well established that, when determining the scope of an arbitration clause under Texas law, courts typically indulge every reasonable presumption in favor of arbitration and resolve all doubts as to the arbitrability of an issue in favor of arbitration. *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 537 (5th Cir. 2019) (citations omitted); *see also Sinclair Grp., Ltd. v. Haggblom*, 548 S.W.3d 40, 44 (Tex. App. 2018) ("A strong presumption exists favoring arbitration, so courts are required to resolve doubts regarding arbitrability in favor of referring the dispute to arbitration.").

Colorado law and policy aligns with Texas and the FAA. "Arbitration is a favored method of dispute resolution under both federal and Colorado law." *Spencer*, 2023 WL 2806856, at *2 (D. Colo. Apr. 6, 2023). It is well established that "[f]ederal courts have a liberal federal policy favoring arbitration agreements," and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Reeves v. Enter.*

*Prods. Partners, LP*, 17 4th 1008, 1011 (10th Cir. 2021) (quotations omitted); *see also Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003) (en banc) ("If ambiguities are found in the arbitration agreement, we must afford the parties a presumption in favor of arbitration and resolve doubts about the scope of the arbitration clause in favor of arbitration.").

### C. Arbitration must be compelled.

Courts applying Texas law in weighing an order compelling parties to arbitrate generally employ a two-part test considering "(1) whether a valid arbitration agreement between the parties exists and, if so, (2) whether the dispute falls within the arbitration agreement's scope." *Dow v. Keller Williams Realty, Inc.*, 625 F. Supp. 3d 556, 562 (N.D. Tex. 2022).

#### 1. Ms. Baker and Government Solutions agreed to arbitrate.

As described in Section II.A, Ms. Baker and Government Solutions elected to arbitrate claims against each other, and the Arbitration Agreement is valid. "Deciding whether the arbitration agreement is valid is an analysis of contract formation." *Id.* After the movant produces competent evidence showing the formation of an agreement to arbitrate, the party resisting arbitration must produce some contrary evidence to put the matter "in issue." *Id.* (citing *Gallagher v. Vokey*, 860 F. App'x 354, 357–58 (5th Cir. 2021)). The Pfeifer Declaration provides ample evidence of the formation of the agreement.

Furthermore, Ms. Baker cannot successfully challenge the Arbitration Agreement as unconscionable in this case. Such claims should be addressed by the arbitrator. Arb. Agmt. ¶ 1.3 ("The arbitrator, and not any … court … shall have the exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Agreement"). Should the Court nevertheless examine such claims, under

Texas law, a plaintiff must demonstrate both procedural and substantive unconscionability. *L.O.D.C. Grp., Ltd v. Accelerate360, LLC*, 621 F. Supp. 3d 716, 724 (E.D. Tex. 2022). "Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms." *Id.* at 725 (citing *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005). The Arbitration Agreement is neither procedurally nor substantively unconscionable.

### (i) The Arbitration Agreement is procedurally fair.

Procedural unconscionability "means that oppression and unfairness must taint the negotiation process leading to the agreement's formation." *Id.*

Here, the Arbitration Agreement is procedurally fair because Ms. Baker was not surprised by its terms. The Arbitration Agreement is a stand-alone document, drafted in a regular-sized font, described in plain and straightforward language, which is entitled in emphasized font, "**ARBITRATION AGREEMENT**." The Arbitration Agreement is linked to the eSignature page, and Ms. Baker was required to certify that she reviewed and fully understood the Arbitration Agreement to complete her application documentation. Pfeifer Decl. ¶¶ 9-10; Exhibit C to Pfeifer Decl. The Arbitration Agreement is not buried in other text or hidden in small print. Instead, the arbitration provision is plainly laid out and all in clear font size. For example, the Arbitration Agreement clearly states, in bold letters at the end of the agreement: **"NOTE: Employee understands that by accepting employment and working for TTEC, s/he agrees to the terms and conditions of this Arbitration Agreement."** Arb. Agmt. p. 6.

Nor can the Arbitration Agreement be described as oppressive. Procedural unconscionability may be found, for example, where there is oppression arising from

unequal bargaining power combined with surprise arising from hidden or buried terms in a long or complex printed form. Ms. Baker voluntarily signed the Arbitration Agreement, and thus freely agreed to waive rights to a trial by judge or jury. There was no oppression because, although Ms. Baker did not negotiate the terms of the Arbitration Agreement, she received a meaningful opportunity to review the mutual Agreement. Pfeifer Decl. ¶ 9. Additionally, the Arbitration Agreement itself advises consultation with an attorney before signing the agreement: "The Employee understands and agrees that Employee has been advised to consult with an attorney of Employee's own choosing before signing this agreement." Arb. Agmt. ¶ 12.0.

### (ii) The Arbitration Agreement is substantively fair.

Substantive unconscionability is concerned with the fairness or oppressiveness of the resulting agreement. *L.O.D.C. Grp.*, 621 F. Supp. 3d at 724. To determine substantive unconscionability, courts examine: (1) the entire atmosphere in which the agreement was made; (2) alternatives, if any, available to the parties at the time of formation; (3) the non-bargaining ability of a party; (4) whether the contract was illegal or against public policy; (5) and whether it is oppressive or unreasonable. *Id.* The purpose of this analysis is to prevent oppression and "unfair surprise." *Id.*

Here, all material terms of the Arbitration Agreement apply equally to both Ms. Baker and Government Solutions. For example:

(1) The Arbitration Agreement provides for a neutral arbitrator: "The arbitrator shall be selected by mutual agreement of the Parties… If for any reason the parties cannot agree to an arbitrator, the arbitration will be administered by the American Arbitration

Association ("AAA), and except as provided in this Agreement, will be under the then current Employment Arbitration Rules of the AAA ("AAA Rules") …" Arb. Agmt. ¶ 3.2.

(2) The Arbitration Agreement provides for more than minimal discovery: "Each party may take the deposition of two individual fact witnesses and any expert witness designated by another party. Each party may also propound requests production of documents, and each party may subpoena witnesses and documents for discovery or the arbitration hearing, including testimony and documents relevant to the case from third parties. Additional discovery may be conducted by mutual stipulation, and the Arbitrator will have exclusive authority to entertain requests for additional discovery, and to grant or deny such requests, based on the arbitrator's determination whether additional discovery is warranted by the circumstances of a particular case." Arb. Agmt. ¶ 5.

(3) The Arbitration Agreement provides for a written award: "The arbitrator is required to render his or her decision in writing, with an opinion stating the legal and factual bases of his or her decision." Arb. Agmt. ¶ 6.5.

(4) The Arbitration Agreement provides for all of the relief that would otherwise be available in court: "The arbitrator may award any remedy to which a party is entitled under applicable law, but remedies will be limited to those that would be available to a party in their individual capacity for the claims presented to the arbitrator, and no remedies that otherwise would be available to an individual under applicable law will be forfeited. The arbitrator shall apply the substantive federal, state, or local law applicable to the claims asserted. Arb. Agmt. ¶ 6.4.

(5) The Arbitration Agreement does not require Plaintiff to pay costs unique to arbitration: "The arbitrator's fees and costs shall be paid by TTEC to the extent required

by controlling law and the AAA Rules, if applicable. Each Party shall be responsible for his or her or its filing fee. The arbitrator will resolve any disputes regarding costs/fees associated with arbitration." Arb. Agmt. ¶ 8.2.

Furthermore, as discussed in the Pfeifer Declaration, Ms. Baker was given as much time as she wished to read, reread and consider the Arbitration Agreement before applying her electronic signature, and was advised of her right to review the agreement with legal counsel to avoid any "unfair surprise." Pfeifer Decl. ¶ 9.

Accordingly, the Arbitration Agreement is both procedurally and substantively conscionable and therefore enforceable under the FAA and Texas law. Indeed, the Arbitration Agreement used by Government Solutions and TTEC has already been enforced by other courts. *See, e.g., Stemmen v. TTEC Gov't Sols., LLC*, No. 2:23-CV-08806-SK, 2024 WL 1641978, at *5 (C.D. Cal. Mar. 7, 2024) (enforcing arbitration agreement, and prohibiting class/collective treatment, with respect to wage and hour employment claims); *Fox v. TTEC Servs. Corp.*, No. 4:19-CV-00037-KGB, 2020 WL 13882107, at *1 (E.D. Ark. Apr. 10, 2020) (same); *Beattie v. TTEC Healthcare Sols., Inc.*, No. 1:18-CV-01574-RM-SKC, 2019 WL 2189481, at *1 (D. Colo. May 21, 2019) (same).

### 2.     The Arbitration Agreement covers all claims in this suit.

As described in Section II.B, all employment claims that may be held by Ms. Baker would be covered by the Arbitration Agreement between her and Government Solutions. As such, her claims must be compelled to arbitration, and she must be dismissed from this lawsuit as an opt-in plaintiff.

### D. Individual arbitration is required.

The U.S. Supreme Court recently upheld the validity of class-action waivers in arbitration agreements, explaining that "Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018). Here, the Arbitration Agreement contains a clear waiver of class and collective action claims, which requires individuals "to bring any dispute in arbitration on an individual basis only, and not on a class and/or collective basis." Arb. Agmt. ¶ 1.4. Because each of Ms. Baker's claims is covered by the Arbitration Agreement and no statute prohibits enforcement of the agreement, she is precluded from asserting these claims on a class or collective basis. As such, Ms. Baker must be compelled to arbitrate these claims on an individual basis. *See, e.g.*, *Emily's Place, Inc. v. Regions Bank*, 764 F. Supp. 3d 485 (N.D. Tex. 2025) (granting motion to compel arbitration based on arbitration agreement, which was not unconscionable).

The Court should dismiss or stay Ms. Baker's claims pending arbitration. The FAA's strong pro-arbitration policy requires courts to rigorously enforce FAA-governed arbitration agreements according to their terms, including by compelling arbitration and dismissing (or staying) litigation. 9 U.S.C. §§ 3-4; *see Epic Sys. Corp.*, 584 U.S. at 505-06. As both the Plaintiff and Ms. Baker must arbitrate their claims, the class claims should also be dismissed. *See Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1159 (10th Cir. 2011) ("Prior to class certification, the named Plaintiffs' failure to maintain a live case or controversy is fatal to the case as a whole[.]").

At minimum, Ms. Baker's claims must be stayed pending arbitration. The FAA and the Texas Arbitration Act provide for a mandatory stay to continue until arbitration concludes. 9 U.S.C. § 3; Tex. Civ. Prac. & Rem. Code § 171.025. If this Court declines to dismiss Ms. Baker from the action, state and federal law firmly establishes that Ms. Baker's individual claims must be ordered to arbitration and stayed in this case pending the outcome of arbitration.

## IV.   CONCLUSION

Ms. Baker was employed by Government Solutions, as has no claims against the named defendant in this case. Ms. Baker's Arbitration Agreement with Government Solutions also compels individual arbitration of all employment-related claims and bars asserting such disputes as a putative class or collective action. TTEC therefore requests the Court enter an order (1) compelling individual arbitration with respect to Ms. Baker, (2) dismissing Ms. Baker from the case or staying her claims pending individual arbitration, and (3) granting such other relief in its favor as the Court deems appropriate.

DATED: July 25, 2025

Respectfully submitted,

/s/ Arthur J. Rooney
Arthur J. Rooney
Perkins Coie LLP
110 North Wacker, Suite 3400
Chicago, IL 60606
Telephone: 312-263-5071
Facsimile: 312-324-9516
Email: ARooney@perkinscoie.com

*Attorneys for Defendant*

## **CERTIFICATE OF CONFERRAL**

     I, Arthur J. Rooney, certify, pursuant to D.C.COLO.LCivR 7.1(a), that I conferred in good faith with counsel for Plaintiff regarding the relief requested in this motion. More specifically, I conferred with counsel for Plaintiff on July 25, 2025. Counsel for Plaintiff stated they object to Defendant's request to compel arbitration.

                                                  */s/ Arthur J. Rooney*
                                                 Arthur J. Rooney

## CERTIFICATE OF SERVICE

     I, Arthur J. Rooney, hereby certify that on July 25, 2025, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

*/s/ Arthur J. Rooney*
Arthur J. Rooney