UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

LOREN ALVAREZ, on behalf of herself and all others similarly situated,

Plaintiff,

v.

Case No. 1:24-cv-02847-PAB-SBP

TTEC SERVICES CORPORATION,

Defendants.

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND MOTION TO COMPEL PLAINTIFF BAKER TO ARBITRATION (DN 46)**

Opt-in Plaintiff Lamis Baker ("Plaintiff" or "Baker") respectfully opposes Defendant's Motion to Compel Arbitration and Motion to Dismiss Pursuant to Rule 12(b)(6). (DN 46).

**SUMMARY OF ARGUMENT**

Defendant's Motion to Dismiss should be denied because:

(1) This motion is premised on the incorrect assertion that Baker did not work for Defendant, TTEC Services Corporation. In fact, Baker did work for Defendant. This is confirmed by her declaration and paystubs.

Defendant's Motion to Compel should be denied because:

(1) Defendant has not yet moved to compel arbitration of opt-in Plaintiff Guadalupe Rocio Vega's claims. Plaintiff Vega joined the case on August 14, 2025. (DN 48.) Thus, the pending motions to compel Plaintiffs Alvarez and Baker to arbitration cannot be dispositive of the case, and Courts in this Circuit, including this Court (and as

1

recently as February 21, 2025, in an FLSA case involving the same Defendant), hold that arbitration issues are merits-based determinations reserved for <u>after</u> a decision on conditional certification;

(2) Defendant has not fulfilled its burden of showing that Plaintiff Baker agreed to the terms of the purported arbitration agreement;

(3) Defendant's contentions about its electronic process for obtaining assent to arbitration terms have not been tested in discovery; and

(4) The arbitration agreement at issue is substantively and procedurally unconscionable.

Accordingly, the motion to compel arbitration should be denied, with prejudice as to reasons (2) and (4), or without prejudice as to reasons (1) and (3).

## BACKGROUND

In this putative class and collective action, Named Plaintiff Alvarez asserts that TTEC violated overtime and regular wage laws by requiring remote workers to purchase, as a condition of employment, without reimbursement, tools which are specifically required by Defendant for the performance of its work. (DN 1 ¶¶ 81-108.) Plaintiff asserts this policy and practice resulted and results in these employees receiving less overtime and regular wages than they are entitled to receive under the FLSA and state wage laws, as the tool costs cut into the overtime and regular wages paid to them. *See* 29 C.F.R. § 531.35.

TTEC moves to compel Opt-In Plaintiff Baker to arbitrate her claims. In support of its motion, TTEC has produced an unsigned, undated arbitration agreement. (DN 41-1 at 6-10.) Notably, unlike in its motion to compel Alvarez, TTEC's motion to compel

2

Baker does not even include a copy of the signature page and assent language it claims she viewed and signed. (*See* generally, DN 41-1, compared to DN 13-1 at 35.) TTEC has also produced an online activity log of "Ms. Baker's General Profile associated with her Candidate ID, including an audit of the dates and times she created her profile and applied to each job [.]" (DN 41-1 at 3 ¶6 and Id. at 13-57). Along with the activity log, TTECH submitted a Declaration from a Vice President of Human Capital describing its process for obtaining electronic signatures for various purposes, such as a "background check consent form", during the application process (Id. at 1-4, and 3 ¶¶ 8- 9) and claiming that Plaintiff signed the arbitration agreement on May 28, 2024, at 2:21 p.m. (Id. at 3-4 ¶ 10.) Defendant further produced a document indicating that Plaintiff signed a "job submission" on May 28, 2024, at 2:21 p.m., which contains no reference to any arbitration agreement, but does indicate that she "electronically signed this job submission" and consented to a background check. (Id. at 59.) Indeed, none of the documents produced by Defendant show an electronic signature from Plaintiff on the arbitration agreement.

Further, Defendant does not identify any entry in Plaintiff's online activity history indicating signature on or assent to the arbitration agreement. (See id. at 13-57.) For example, for the time and date that TTEC claims she signed the arbitration agreement, May 28, 2024, at 2:21, the logs reference an "updated profile" (Id. at 43.) Another log references a "Submission Updated" and "submission complete", but still no reference to signing an arbitration agreement. (Id. at 55.)

Numerous additional entries appear for dates and times before and after she purportedly signed the agreement, indicating that her activities were continuing to be

3

recorded even after being hired by TTEC (see id.). Again, in all the dozens of pages of activity history produced by TTEC there does not appear to be an entry even referencing an arbitration agreement, much less showing that Baker agreed to one.

Plaintiff Baker does not recall ever signing or seeing any agreements about arbitration with TTEC. (Ex. 1 ¶ 7.) During her onboarding process with TTEC, back in 2021, she does not recall signing or seeing any agreements about arbitration. (Id. ¶ 8.) During the period where she moved to the different department, in 2024, Baker again does not recall signing or seeing any agreements about arbitration. (Id. ¶ 9.) Baker avers that she has reviewed the arbitration agreement attached to TTEC's motion to compel arbitration. (Id. ¶ 10.) And to the best of her knowledge, she did not see or sign it: "To the best of my knowledge, I have never seen this document before. I am confident I did not sign this document.") Id.

What Baker did sign was an offer letter, which contains no arbitration provision. (Id. ¶ 11; Ex. 3, offer letter.) When Baker started her employment with TTEC in 2021, and when she moved departments, in 2024, she was given an offer letter, and she asserts she signed that. (Ex. 1 ¶ 11.) She went into her online portal to sign in. (Id.) It was very short, just a page. (Id.) It was not the arbitration agreement attached to TTEC's motion. (Id.) Baker's most recent offer letter was dated May 28, 2024. (Id.; Ex. 3.) It references an arbitration agreement (and various other agreements, like confidentiality) that would be provided at some point in the future, but none was ever provided to Baker and she never signed one. (Ex. 1 ¶ 11.) It says if she wanted to see the agreement, she should contact TTEC's Human Capital Representative. (Id.) TTEC's

4

motion claims Baker signed an arbitration agreement on May 28, 2024. (Id.) But Baker avers that what she signed was the offer letter. (Id.)

When Baker's employment with TTEC ended, she went to her online employee portal to see if any documents entitled her to severance pay. (Id. ¶ 12.) All that was there was her offer letters. (Id.) There was no arbitration agreement. (Id.)

## LEGAL STANDARD

TTEC moves to compel under the Federal Arbitration Act ("FAA"). The FAA provides generally that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U. S. C. § 2. "The issue of whether an arbitration agreement was formed between the parties must always be decided by a court, regardless of whether the alleged agreement contained a delegation clause or whether one of the parties specifically challenged such a clause." *Fedor v. United Healthcare, Inc.,* 976 F.3d 1100, 1105 (10th Cir. 2020) (citation omitted).

## ARGUMENT

1. **The Motion To Dismiss Should Be Denied Because Baker Worked For Defendant.**

As an initial matter, TTEC appears to move to dismiss Baker's claims under Rule 12(b)(6). (DN 46 at 1-2.) This motion is premised on the incorrect assertion that Baker did not work for Defendant, TTEC Services Corporation. In fact, Baker did work for Defendant TTEC Services Corporation from 2021 to around July 2024. This is confirmed by her declaration and paystubs. (Ex. 1 ¶¶ 2-4; Ex. 2, sample paystub from Defendant.) This motion should be denied.

5

**2.    The Court Should Reserve Arbitration Issues To Step Two of the Conditional Certification Process.**

In light of the addition of another new plaintiff in this case (Ms. Vega), Plaintiff respectfully renews the argument that the Court should reserve deciding arbitration issues in this case to step two of the conditional certification framework. (See DN 29.) In the Tenth Circuit, "the issue of whether putative class members are subject to arbitration agreements should be raised at the second stage of the certification analysis." *Judd v. KeyPoint Gov't Sols., Inc.*, No. 18-CV-00327-RM-STV, 2018 WL 4383037, at *12 (D. Colo. July 30, 2018), report and recommendation adopted, No. 18-CV-00327-RM-STV, 2018 WL 7142193 (D. Colo. Dec. 4, 2018). *Wilfong v. TTEC Services Corporation*, No. 1:24-CV-01076-CNS-KAS, 2025 WL 580474, at *6 n2 (D. Colo. Feb. 21, 2025) ("As explained above, the Court will not address the binding nature of the arbitration agreements until the second stage.")

Renewing this argument is appropriate because two additional Plaintiffs, Barker and Vega opted in to the case since the parties filed competing motions to stay briefing on their motions for conditional certification and to compel arbitration, respectively. (DN 37.) The Court recently denied both motions to stay. (DN 38.)

In denying Plaintiff's motion to stay briefing on the motion to compel arbitration until the second stage of the certification analysis, the Court based its reasoning on Named Plaintiff Alvarez's previous status as the lone (and representative) plaintiff:

> It is true that the "the issue of whether putative class members are subject to arbitration agreements should be raised at the second stage of the certification analysis." *Judd v. KeyPoint Gov't Sols., Inc.*, No. 18-cv-00327-RM-STV, 2018 WL 4383037, at *12 (D. Colo. July 30, 2018), *report and recommendation adopted*, 2018 WL 7142193 (D. Colo. Dec. 4, 2018). However, here, TTEC does not seek to compel arbitration of putative collective members' claims, but rather seeks to compel arbitration of the representative plaintiff's claims. *See* Docket No. 13 at

6

> 12-19. The cases cited by Ms. Alvarez are inapposite because the defendants in such cases did not move to compel arbitration of the representative plaintiff's claims. *See* Docket No. 29 at 7-10.

*Alvarez v. TTEC Servs. Corp.,* No. 24-CV-02847-PAB-SBP, 2025 WL 1563712, at *3 (D. Colo. June 2, 2025). In response to Plaintiff's argument that Plaintiff Alvarez's purported arbitration agreement did not change the analysis that arbitration issues are reserved for step two, the Court based its reasoning on the absence of any opt-in plaintiffs at the time the parties briefed the issue:

> Ms. Alvarez cites *Beattie v. TTEC Healthcare Sols., Inc.*, No. 18-cv-03098-RM-NRN, 2019 WL 2866559, at *2 (D. Colo. July 3, 2019), for the proposition that "arbitration agreements signed by the two named Plaintiffs did not prevent the court from ruling on, and granting, the named Plaintiffs' motion for conditional collective action certification." *Id.* at 11. However, as Ms. Alvarez notes, *"Beattie* involved numerous opt-ins at the time it was decided." *Id.* In ruling on the plaintiffs' motion for conditional certification of the collective, *Beattie* found that, "as this Court recently concluded in another case, '[t]he fact that claims *not presently before the Court* may be ordered to arbitration at a later date does not require that notice be withheld from potential members of the collective under the FLSA's long-established procedures for doing so, merely because some members signed an arbitration agreement.' " *Beattie*, 2019 WL 2866559, at *1 (emphasis added) (quoting *Judd*, 2018 WL 7142193, at *6).
>
> By contrast, here, TTEC moves to compel the arbitration of Ms. Alvarez's claims, which are presently before the Court. Because Ms. Alvarez is the representative plaintiff, if the Court were to grant TTEC's motion to compel arbitration, she would lack "any personal interest in prosecuting this action in this Court on behalf of others who have yet to opt in" and her motion for conditional certification would be denied as moot.

Alvarez, 2025 WL 1563712, at *3 (cites omitted). The circumstances underlying the Court's analysis have changed, as Plaintiff Baker opted-in to the case on May 14, 2025 (DN 37) and Plaintiff Vega joined the case on August 14, 2025. (DN 48.) No motion to compel has been filed with respect to Plaintiff Vega's claims, and the parties have not yet conferred about whether TTEC asserts that she signed an arbitration agreement.

7

Thus, a decision on granting the motions to compel as to Plaintiffs Alvarez and Baker could not moot the case, as the case could move forward with Plaintiff Vega as the representative plaintiff, subject to the Court permitting that amendment to the complaint. Should TTEC move to compel Vega to arbitration, this would be the third motion to compel arbitration in this case. In a similar case, *Beattie, et al. v. TTEC Healthcare Solutions, Inc., et al.*, Case No. 1:18-cv-03098-RM-NRN (D. Colo.), the parties had to brief five separate motions to compel arbitration that the defendants filed over the course of that litigation. (See Case No. 1:18-cv-03098 at DN 18, 71, 85, 96, 190). That is less efficient than deciding arbitration issues together.

The Court should reserve ruling on any arbitration motions until the motion for conditional certification is decided, any notice has been issued, and the full composition of the case is known. This would eliminate the need for filing and litigating multiple arbitration motions over the course of the case. *See, e.g., Wilson v. Yellow Transp.*, Inc., No. 06-2281-CM, 2007 WL 445197 (D. Ks. Jan. 29, 2007) ("Rather than granting plaintiff's motion to stay briefing, however, the court will deny without prejudice the motions to compel arbitration."). At a minimum, any order by the Court on the present motion should not preclude any opt-in plaintiffs from joining the case or preclude Plaintiffs from moving to amend to add/substitute additional named Plaintiffs.

**2. Defendant Has Not Fulfilled its Burden of Showing that Plaintiff Signed the Arbitration Agreement at Issue.**

As noted above, "The issue of whether an arbitration agreement was formed between the parties must always be decided by a court[.]" *Fedor,* 976 F.3d 1100, 1105 (10th Cir. 2020) (citation omitted).

8

Baker worked, lived, and would have assented to arbitration in Texas. Under Texas law, "[c]ontracts require mutual assent to be enforceable. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex.1992). "Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind." *Sonnichsen*, 221 S.W.3d at 635 (citations omitted).

Defendant has not shown that Baker assented to this agreement. As discussed above, TTEC has produced a five-page unsigned, undated boilerplate arbitration agreement. (DN 41-1 at 6-10.) The only parties to the agreement are TTEC Holdings, Inc., and "the employee". (Id. at 6.) Notably, unlike Alvarez, TTEC's motion to compel Baker does not even include a copy of the signature page it claims she signed. (*See* generally, DN 41-1, compared to DN 13-1 at 35.)

Asserting that Baker electronically signed the agreement on May 8, 2024 at 2:21pm, TTEC has produced an online activity log of "Ms. Baker's General Profile associated with her Candidate ID, including an audit of the dates and times she created her profile and applied to each job [.]" (DN 41-1 at 3 ¶6 and Id. at 13-57). An attendant declaration from a Vice President of Human Capital describes TTEC's process for obtaining electronic signatures for various purposes, such as a "background check consent form", during the application process (Id. at 1-4, and 3 ¶¶ 8- 9) and states that Plaintiff signed the arbitration agreement on May 28, 2024, at 2:21 p.m. (Id. at 3-4 ¶ 10.) To be clear, Defendant produced a document indicating that Plaintiff signed a "job submission" on May 28, 2024, at 2:21 p.m.  It contains no reference to the arbitration agreement but does indicate that she "electronically signed this job submission" and

9

consented to a background check. (Id. at 59.) But, none of the documents produced by Defendant show an electronic signature from Plaintiff on the arbitration agreement.

Further, Defendant does not identify any entry in Plaintiff's online activity history indicating signature or assent on the arbitration agreement. (See id. at 13-57.) For example, for the time and date that TTEC claims she signed the arbitration agreement, May 28, 2024, at 2:21, the logs reference an "updated profile" (Id. at 43.) Another log references a "Submission Updated" and "submission complete", but still no reference to signing an arbitration agreement. (Id. at 55.)

In all the dozens of pages of activity history produced by TTEC there does not appear to be an entry even referencing an arbitration agreement, much less showing that Baker ever saw or signed one. To that end, Baker's declaration supports the conclusion that she did not assent to the arbitration document at issue. (*See* Ex. 1, discussed in Background above.) Baker asserts she signed only an offer letter (Ex. 3) and did not see or sign an arbitration agreement. (Ex. 1 ¶¶ 7-12.)

For these reasons, TTEC has failed to establish that Plaintiff Baker agreed to the purported arbitration agreement and the motion to compel Plaintiff Baker to arbitration should be denied with prejudice. Alternatively, as set forth next, discovery should proceed, and an evidentiary hearing should be held to determine if TTEC can meet its burden to prove formation of the arbitration contract.

**3.  TTEC's Contentions Regarding the Electronic Signature Process Have Not Been Tested in Discovery.**

Should the Court find that the current record is inconclusive as to whether Baker e-signed the arbitration agreement, the Court should deny the motion to compel without prejudice so that she can test TTEC's contention that she signed the agreement through

10

discovery. Plaintiff has issued written discovery requests that bear on this issue, and a deposition of Defendant's Vice President and declarant and Defendant's IT personnel may be necessary to test TTEC's contentions regarding the electronic records attached to TTEC's motion to compel.

Given Plaintiff's declaration, the unsigned state of the arbitration agreement on which Defendant relies, and the lack of reference in Plaintiff's online activity history to her signing an arbitration agreement, reserving this issue pending further development of the factual record is appropriate.

**4.  The Arbitration Agreement Cannot Be Enforced Because It Is Substantively and Procedurally Unconscionable.**

Under Texas law, "courts may consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of an arbitration provision." *In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002). "[P]rocedural unconscionability … refers to the circumstances surrounding the adoption of the arbitration provision[.] Id. at 571. "[S]ubstantive unconscionability … refers to the fairness of the arbitration provision itself. Id.

TTEC's arbitration agreement is procedurally unconscionable. As noted above, TTEC has not produced the e-signature page that it claims Baker was shown to sign the agreement. If TTEC cannot produce this, the motion should be denied because TTEC has failed to show what it claims Baker signed. But regardless of that, the agreement remains procedurally unconscionable because the e-signature page confusingly and unfairly conflates a required signature from the employee certifying that the "information provided in this application, and in my resume … is true and correct" with a signature agreeing to TTEC's arbitration agreement:

11

> I certify that all information provided in this application, and in my resume, curriculum vitae or other documentation provided to TTEC, is true and complete. I understand that any misrepresentation, falsification or omission of relevant information may disqualify me from further consideration of employment, and may result in my dismissal if discovered at a later date.
>
> By entering my full name and unique identifier below, I certify that I have read, understand and agree to the foregoing, and, to the best of my knowledge and belief, the information that I have provided is true and correct.
>
> Please review TTEC's Arbitration Agreement **here.**
>
> By entering my full name and unique identifier below, I certify that I have read, understand and agree to the foregoing Arbitration Agreement and understand that accepting employment and working for TTEC, I agree to the terms and conditions of the Arbitration Agreement.

(DN 13-1 at 35.) Thus, an employee who is signing simply to certify that the information provided in their application is true, is also deemed to be agreeing to an arbitration agreement they may or may not have seen. There is no option to confirm the truth of the statements in their application separately from agreeing to arbitration. This potentially deceptive conflation renders the agreement procedurally unconscionable.

The agreement is also procedurally unconscionable because TTEC apparently only gives employees two hours to review it, not long enough to consult with an attorney to understand it as the arbitration agreement advises (DN 41-1 at 10 ¶ 12.) TTEC asserts the arbitration agreement is provided with the offer letter. (DN 41-1 at 3 ¶ 8 ("Once an applicant receives an offer of employment, the applicant must log back into Taleo to complete their profile through a link sent to the applicant.…The applicant is also presented with the arbitration agreement, which the applicant must read and sign before continuing on in the hiring and onboarding process."). While Baker asserts she was given only an offer letter and no arbitration agreement (Ex. 1 ¶¶ 7-12), as shown in the attached onboarding email (Ex. 4), TTEC provides a link to the offer and states it "[M]ust be completed within 2 hours of receipt." (Id.) Somewhat confusingly, Baker received the onboarding email on 5/15 and signed her offer letter on 5/24. Regardless,

12

TTEC's stated two-hour time limit to review, consult with an attorney, and sign, renders the arbitration agreement procedurally unconscionable.

The agreement is substantively unconscionable because it restricts the employee's access to discovery, compared to what would be available in court under the Federal Rules. "Other courts have found arbitration provisions substantively unconscionable in part because of limitations on discovery." *Ostroff v. Alterra Healthcare Corp.,* 433 F. Supp. 2d 538, 546 (E.D. Pa. 2006) (citing *Walker v. Ryan's Fam. Steak Houses, Inc.*, 400 F.3d 370, 387 (6th Cir. 2005) ("[T]he limited discovery that the … forum provides could significantly prejudice employees or applicants. The rules allow just one deposition as of right and additional depositions only at the discretion of the (arguably biased) panel …"); *Domingo v. Ameriquest Mortg. Co.*, 70 Fed.Appx. 919, 920 (9th Cir.2003) (arbitration provision voided in part because of limits on discovery); *Geiger v. Ryan's Family Steak Houses, Inc.*, 134 F.Supp.2d 985, 996 (S.D.Ind.2001) (arbitration provision voided in part because discovery only allowed one deposition as of right); *Hooters of America*, 39 F.Supp.2d at 614 (arbitration provision voided in part because of limits on discovery); and *Booker v. Robert Half Int'l, Inc.*, 315 F.Supp.2d 94, 103 (D.D.C. 2004) ("Thus, one requirement for an enforceable arbitration agreement is more than minimal discovery be permitted.") *See also Hoffman v. Cargill, Inc.*, 968 F.Supp. 465, 475 (N.D.Iowa 1997) ("Although arbitration proceedings may, and often do, provide much more limited discovery procedures than is common in regular court proceedings, a party must be provided a fair opportunity to present its claims.").

TTEC's arbitration agreement severely, and improperly, limits discovery:

> **5.0 Discovery**
>
> Each party may take the deposition of two individual fact witnesses and any expert witness designated by another party. Each party may also propound requests production of documents, and each party may subpoena witnesses and documents for discovery or the arbitration hearing, including testimony and documents relevant to the case from third parties. Additional discovery may be conducted by mutual stipulation, and the Arbitrator will have exclusive authority to entertain requests for additional discovery, and to grant or deny such requests, based on the arbitrator's determination whether additional discovery is warranted by the circumstances of a particular case.

(DN 41-1 at 8.) While it permits document requests and subpoenas, it allows only two fact depositions, and no interrogatories or requests for admissions. Additional discovery is only available by "mutual stipulation" or if granted by the Arbitrator in its "exclusive authority". (Id.) These limitations would unfairly limit Plaintiff's ability to substantively gather relevant evidence and present her case. Interrogatories are needed to identify witnesses and to gather information to prove TTEC's alleged policy of not reimbursing for tools and equipment, to itemize the relevant requirements of remote workers regarding internet speed and related computer equipment, and to interpret and explain TTEC's pay data (including overtime data and any reimbursement data). Further, Plaintiff may need to depose more than two fact witnesses to prove the policy at issue and damages stemming from the same, and to test any contentions by TTEC that it was not required to reimburse for the tools and equipment at issue. The agreement's limitations on discovery therefore render the agreement substantively unconscionable, and thus, unenforceable

## CONCLUSION

Accordingly, the Court should deny Defendant's Motion to Dismiss and Motion to Compel Plaintiff Baker to Arbitration (DN 46).

Respectfully Submitted,

/s/Zev Antell
Craig Juraj Curwood (VSB No. 43975)
Zev Antell (VSB No. 74634)

14

ButlerCurwood, PLC
140 Virginia Street, Suite 302
Richmond, VA 23219
Tel: 804.648.4848
Fax: 804-237-0413
zev@butlercurwood.com, craig@butlercurwood.com

/s/Timothy Lawrence Coffield
Timothy Lawrence Coffield (VSB 83430)
Coffield PLC
106-F Melbourne Park Circle
Charlottesville, VA 22901
p: (434) 218-3133; f: (434) 321-1636
tc@coffieldlaw.com

Counsel for Plaintiffs and Putative Class and Collective

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 14, 2025 a true and correct copy of the foregoing was filed using the Court's CM/ECF system, which will send Notification of Electronic Filing (NEF) to all counsel of record.

/s/Zev Antell
Counsel for Plaintiffs and Putative Class and Collective