IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-02847-PAB-SBP

LOREN ALVAREZ, on behalf of herself and all others similarly situated,

    Plaintiff,

v.

TTEC SERVICES CORPORATION,

    Defendant.

---

**ORDER**

---

This matter comes before the Court on Defendant's Motion to Compel Arbitration with Lamis Baker and to Dismiss Her From the Case Under Fed. R. Civ. P. 12(b)(6) [Docket No. 46], Plaintiff's Motion for Leave to File First Amended Complaint to Add/Substitute Named Plaintiffs [Docket No. 52], and Defendant's Motion to Compel Arbitration with Guadalupe Vega and to Dismiss Her From the Case Under Fed. R. Civ. P. 12(b)(6) [Docket No. 54]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

### I. PROCEDURAL BACKGROUND

On October 15, 2024, Loren Alvarez filed this action, on behalf of herself and all others similarly situated, against TTEC Services Corporation ("TTEC"). Docket No. 1. The complaint asserts claims under (1) the Fair Labor Standards Act (the "FLSA"), (2) the Virginia Overtime Wage Act, and (3) the Virginia Wage Payment Act for unpaid wages. *Id.* at 15-20. This action is a "'hybrid' class and collective action for unpaid

overtime under both federal and state law" pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23. *Id.* at 1, ¶ 2.

On December 6, 2024, TTEC filed a motion to compel arbitration of Ms. Alvarez's claims. Docket No. 13. That same day, Ms. Alvarez filed a motion to conditionally certify the collective pursuant to the FLSA. Docket No. 14. On August 29, 2025, the Court granted TTEC's motion to compel arbitration and denied Ms. Alvarez's motion for conditional certification. Docket No. 51. The Court found that, because Ms. Alvarez's claims were subject to arbitration, she could not represent the collective. *See id.* at 13-17. Thus, the Court denied Ms. Alvarez's motion for conditional certification without prejudice, to be refiled when a named plaintiff, whose claims are not subject to arbitration, is identified.[1] *Id.*

On May 14, 2025, Lamis Baker opted in to this case, and Guadalupe Vega opted in on August 14, 2025. Docket Nos. 37, 48. Upon filing their consents, Ms. Baker and Ms. Vega became parties to this case. *Mickles on behalf of herself v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018) ("The plain language of § 216(b) supports that those who opt in become party plaintiffs upon the filing of a consent and that nothing further, including conditional certification, is required."). Plaintiff moves for leave to file

---

[1] The Court stayed Ms. Alvarez's individual claims pending arbitration. Docket No. 51 at 18. The Court, however, permitted Ms. Alvarez, during the stay, to "file a motion for leave to amend her complaint to substitute the named plaintiff," the resolution of which would require the Court to consider whether the proposed named plaintiffs' claims are subject to arbitration. *See id.* at 17. These issues do not impact the resolution of Ms. Alvarez's individual claims that are being arbitrated. Therefore, Ms. Alvarez's motion and responses are properly before the Court. *See C&J Equip. Mfg. Corp. v. Grady*, 2024 WL 3582279, at *1 (D.N.M. Feb. 21, 2024) (permitting the parties to file motions during the stay).

an amended complaint that names Ms. Baker and Ms. Vega as the representative plaintiffs. Docket No. 52. TTEC moves to compel arbitration of Ms. Baker and Ms. Vega's claims. Docket Nos. 46, 54. TTEC contends that, because their claims are subject to arbitration, Ms. Baker and Ms. Vega cannot serve as the representative plaintiffs. Docket No. 56 at 2.

## II.  FACTUAL BACKGROUND

TTEC operates "remote call centers, through which its employees work from home." Docket No. 1 at 5-6, ¶ 22. Employees regularly work or were scheduled to work at least 40 hours per week, typically more than eight hours per day. *Id.* at 6, ¶ 28. Employees regularly work in excess of 40 hours per week. *Id.*, ¶ 29. As a condition of employment, TTEC requires its employees to purchase "tools," including high-speed Internet service, ethernet equipment, and computers, without reimbursement. *Id.* at 7, ¶ 31. As a result, employees did not receive overtime wages "free and clear of their tool costs," which had the effect of the employees receiving less overtime wages. *Id.*, ¶ 32. Because employees were required to purchase tools without reimbursement, TTEC deprived employees of the wages that they were owed. *Id.* at 20, ¶¶ 105-06.

The complaint asserts claims under (1) the Fair Labor Standards Act (the "FLSA"), (2) the Virginia Overtime Wage Act, and (3) the Virginia Wage Payment Act for unpaid wages. *Id.* at 15-20. This action is a "'hybrid' class and collective action for unpaid overtime under both federal and state law" pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23. *Id.* at 1, ¶ 2.

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") "reflect[s] both a liberal . . . policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1145 (10th Cir. 2014) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Accordingly, courts "must rigorously enforce arbitration agreements according to their terms," *Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013) (citation and quotation omitted). "In addition, this liberal policy covers more than simply the substantive scope of the arbitration clause, and encompasses an expectation that [arbitration] procedures will be binding." *P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 866 (10th Cir. 1999) (citation and quotation omitted). It is "the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010) (internal quotation and citation omitted). A court discharges this duty by: "(1) applying the presumption of arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand; and (2) adhering to the presumption and ordering arbitration only where the presumption is not rebutted." *Id.*

"[W]hether a party agreed to arbitration is a contract issue, meaning arbitration clauses are only valid if the parties intended to arbitrate." *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*, 59 F.4th 1090, 1097 (10th Cir. 2023). "No party can be compelled to submit a dispute to arbitration without having previously agreed to so submit." *Id.* (citation omitted). "Accordingly, the first task of a court asked to compel

4

arbitration of a dispute is [typically] to determine whether the parties agreed to arbitrate that dispute." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

Determining whether a dispute is subject to arbitration "is similar to summary judgment practice." *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 612 (10th Cir. 2014) (quoting *Hancock v. Am. Tel. & Tel. Co., Inc.,* 701 F.3d 1248, 1261 (10th Cir. 2012)). The party moving to compel arbitration "bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate." *BOSC, Inc. v. Bd. of Cnty. Commissioners of Cnty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017). If the moving party satisfies this burden, "the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith." *Id.* (citing *Hancock*, 701 F.3d at 1261). "The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate has been made by the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *In re HomeAdvisor, Inc. Litig.*, No. 16-cv-01849-PAB-KLM, 2019 WL 4463890, at *2 (D. Colo. Sept. 17, 2019) (citation omitted); *Bellman*, 563 F. App'x at 612 ("In ascertaining whether questions of material fact remain, we give the nonmoving party – here, Plaintiffs – the benefit of all reasonable doubts and inferences that may arise." (citation and quotations omitted)).

A district court may "decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing

arbitration." *BOSC*, 853 F.3d at 1177 (quoting *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014)). But if "material disputes of fact do exist," the FAA "calls for a summary trial." *Id*. (citing *Howard*, 748 F.3d at 978 (emphasis omitted)).

## IV. ANALYSIS

### A. Motion to Compel Ms. Vega's Claims

#### 1. Whether Mutual Assent Exists

"To form a contract under California . . . law,[2] there must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023). "Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Martinez v. BaronHR, Inc.*, 51 Cal. App. 5th 962, 967 (2020) (citations omitted).

---

[2] "An arbitration agreement is just a type of contract, and the FAA does not itself provide a substantive law governing the formation or general interpretation of contracts, so ordinary state contract law always fills in crucial gaps in any arbitration agreement." *Rodgers-Rouzier v. Am. Queen Steamboat Operating Co., LLC*, 104 F.4th 978, 991 (7th Cir. 2024) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009)). Plaintiff contends that California law applies because that is where Ms. Vega "worked, lived, and would have assented to arbitration," while TTEC applies Texas law. Docket No. 54 at 8; Docket No. 57 at 6. However, TTEC acknowledges that Ms. Vega resides in California and that California law "aligns" with Texas. Docket No. 54 at 8. The Court will apply California law as Ms. Vega worked for TTEC from her residence in California and would have completed the onboarding process in California. Docket No. 57-1 at 1, ¶¶ 1-2; *see Armbruster v. Am. Fam. Mut. Ins. Co.*, 2021 WL 12344612, at *3 (Colo. App. May 13, 2021) (under Colorado choice of law rules, "courts will consider the place of contracting; the place of negotiation of the contract; the place of performance; the location of the subject matter of the contract; and the domicile, residence, nationality, place of incorporation, and place of business of the parties").

The Court finds that TTEC has satisfied its initial burden to show that TTEC and Ms. Vega mutually assented to arbitrate their claims.  TTEC submits the declaration of Gretchen Pfeifer, Vice President of Human Capital at TTEC, in support of its assertion that Ms. Vega agreed to arbitrate her claims.  *See* Docket No. 55 at 1, ¶ 2.  Ms. Pfeifer states that Ms. Vega was hired as customer service representative on or around May 9, 2023.  *Id.* at 2, ¶ 6.  Ms. Pfeifer states that the "Taleo system is used by applicants during both the pre-offer and post-offer stage of the hiring process."  *Id.*, ¶ 4.  Upon receiving an offer of employment, applicants must log back into Taleo to finalize their general profile.  *Id.*, ¶ 5.  As a "mandatory step before continuing on in the hiring and onboarding process, applicants are required to review and agree to the terms of the Arbitration Agreement by providing their name and unique identifier as an eSignature."  *Id.*, ¶ 5.  By signing the eSignature page, the applicant certifies that she "read, understand[s], and agree[s] to the Arbitration Agreement, and understand[s] that by accepting employment the applicant agrees to the terms and conditions of the Arbitration Agreement."  *Id.*  This action generates an "eSignature confirmation'" that is coded in Taleo as "eSignature_United_States."  *Id.* at 2, 3, ¶¶ 6, 9; Docket No. 55-1 at 2.  Taleo captures the IP address, date, and time at which the eSignature is provided, as well as the unique identifier that is used to sign the eSignature page.  Docket No. 55 at 3, ¶ 9.

Ms. Pfeifer attaches to her declaration a blank copy of the eSignature page Ms. Vega was presented with, Ms. Vega's eSignature confirmation page, a blank copy of the Arbitration Agreement, and the information captured by Taleo at the time of signing.  Docket No. 55-1.  TTEC also produces the eSignature page that each applicant must

7

sign before beginning employment with TTEC.  *Id.* at 4.  The eSignature page tells the applicant to review "TTEC's Arbitration Agreement" and provides a hyperlink to the same.  *Id*.  The eSignature page states that, by "entering my full name and unique identifier below, I certify that I have read, understand and agree to the foregoing Arbitration Agreement and understand that by accepting employment and working for TTEC, I agree to the terms and conditions of the Arbitration Agreement."  *Id.*  Directly above the fields where applicants must sign with their full name and unique identifier, the eSignature page states, by "my eSignature below, I certify that I have read, fully understand[,] and accept all terms of the foregoing statement and arbitration agreement."  *Id.*  Ms. Pfeifer states that Ms. Vega was required to login to her account and sign the eSignature page with her unique identifier.  Docket No. 55 at 2-3, ¶¶ 6-7.  Taleo recorded the IP address at the time that the eSignature was recorded, showing that the eSignature Page was signed in San Diego California, "which is consistent with the address information TTEC has on file for Ms. Vega."  *Id.* at 3, ¶ 9.

   The evidence adduced by TTEC shows that Ms. Vega manifested her assent to the Arbitration Agreement by signing the eSignature page.  Thus, the Court finds that TTEC has met its initial burden.  *See Stemmen v. TTEC Gov't Sols., LLC*, 2024 WL 1641978, at *3 (finding that plaintiff manifested assent to the arbitration agreement by using her login information to access her Taleo account and signing the eSignature page with her full name and identifier and noting that the "IP address captured when Plaintiff signed was traced to Camarillo, California, consistent with the home address Plaintiff provided"); *Trevino v. Acosta, Inc.*, 2018 WL 3537885, at *5 (N.D. Cal. July 23, 2018) (finding that a plaintiff assented to arbitration where defendant provided the

8

declaration of its onboarding manager that "detailed the procedures necessary to complete the onboarding process," declared that plaintiff "completed the onboarding process and referred to true and correct copies of the Taleo system screen shot . . . and email offer," and testified that the "only way for [plaintiff] to complete the arbitration agreement is to log in to the onboarding system using his user name and password, complete all of the prior tasks, and the[n] type his name in to acknowledge the Arbitration Policy") (internal quotations, citations, and alterations omitted) (applying California law).

Turning to whether plaintiff has carried her burden to dispute the existence of mutual assent, plaintiff notes that the eSignature confirmation page only references a "job submission" and "contains no reference to the arbitration agreement." Docket No. 57 at 7. Plaintiff contends that "none of the documents produced by Defendant show an electronic signature from [Ms. Vega] on the Arbitration Agreement itself" and the Taleo information captured regarding the eSignature does not "indicate what documents the signature records relate to." *Id*. However, as Ms. Pfeifer explains, the code "eSignature_United_States" is generated when the applicant agrees to the content that is displayed on the eSignature page, which includes the Arbitration Agreement. *See* Docket No. 55 at 2, 3, ¶¶ 5-6, 9. The fact that the code used by TTEC does not refer specifically to the Arbitration Agreement does not dispute Ms. Pfeifer's explanation or the evidence presented in support thereof. Ms. Vega's declaration, stating that she has "no recollection of ever seeing an arbitration agreement with TTEC, much less signing one," is insufficient to meet plaintiff's burden. *See* Docket No. 57 at 8. Ms. Vega's inability to recall signing an arbitration agreement does not dispute the evidence

9

produced by TTEC showing that Ms. Vega did enter a contract to arbitrate. *See Solorio v. ABC Phones of N. Carolina, Inc.*, 2021 WL 2390420, at *3 (E.D. Cal. June 11, 2021) ("The fact that a person does not remember signing an Arbitration Agreement is not sufficient to challenge the existence of an agreement.") (internal quotation, alterations, and citations omitted); *Trevino*, 2018 WL 3537885, at *7 ("As [plaintiff] provides no evidence . . . , other than [plaintiff's] declaration that he did not remember everything he signed, the Court finds by a preponderance of evidence that plaintiff signed the arbitration agreement.") (applying California law).

Accordingly, the Court finds that Ms. Vega agreed to the arbitration clause.

### 2. Scope of the Arbitration Agreement

The Arbitration Agreement provides that, "[e]xcept as specifically excluded in this Agreement, this Agreement covers any and all disputes, past, present, or future, between TTEC and Employee." Docket No. 55-1 at 7-8. Ms. Vega does not contest that her claims are within the scope of the Arbitration Agreement. Moreover, the Court finds that Ms. Vega's claims do not fall within any of the disputes that are excluded by the Arbitration Agreement. *See id.* at 8. Accordingly, the Court finds that Ms. Vega's claims are covered by the Arbitration Agreement.

### 3. Whether the Arbitration Agreement is Unconscionable

Plaintiff contends that the Arbitration Agreement is procedurally and substantively unconscionable. Docket No. 57 at 8-11. The Court first addresses TTEC's argument that the claims of unconscionability should be addressed by the arbitrator and not the Court. *See* Docket No. 54 at 9.

The arbitration agreement contains a delegation provision that states in relevant part:

> The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable. However, as stated in the "Class and Collective Action Waivers" section below, the preceding sentence does not apply to the Class Action Waiver and/or Collective Action Waiver.

Docket No. 55-1 at 6.  "Arbitrability disputes are for the arbitrator unless the party contesting arbitration specifically challenges the delegation clause included in the parties' agreement."  *Frazier v. W. Union Co.*, 377 F. Supp. 3d 1248, 1268 (D. Colo. 2019) (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010)).  Here, plaintiff does not challenge the delegation clause, but rather argues that the Arbitration Agreement is unconscionable because the eSignature page "confusingly and unfairly" accepts an applicant's certification that the information in her application is accurate as also being acceptance to the Arbitration Agreement and imposes severe limitations on discovery.  *See* Docket No. 57 at 8-11.  None of these arguments address the validity of the delegation clause or TTEC's contention that the unconscionability arguments must be addressed by an arbitrator.  *See generally id.*

Therefore, the Court finds that plaintiff's challenges to the unconscionability of the arbitration agreement are for the arbitrator to decide.  *See Naizgi v. HSS, Inc.,* 685 F. Supp. 3d 1015, 1021 (D. Colo. 2023) (holding that "the issue of unconscionability is for the arbitrator to decide" where plaintiff challenged "the Agreement's one-year limitations provision, the parties' unequal bargaining power, and Defendant's illusory promises"); *McGuire v. CarMax Bus. Servs. LLC*, No. 23-cv-02938-NYW-SBP, 2024 WL

3897073, at *8 (D. Colo. Aug. 16, 2024), *report and recommendation adopted,* 2024 WL 4027964 (D. Colo. Sept. 3, 2024) (holding that it is for the arbitrator "to address the merits of [plaintiff's] arguments against enforcement of the Provision, including on unconscionability grounds" where plaintiff "has not challenged the delegation provision specifically").

B. **Motion to Compel Ms. Baker's Claims**

1. *Whether Ms. Baker Was Employed by TTEC*

TTEC argues that Ms. Baker is "not a proper plaintiff in this case because her employment was with Government Solutions – not the named, defendant TTEC." Docket No. 46 at 1. Ms. Pfeifer states that Ms. Baker was hired by TTEC Government Solutions, LLC which is an affiliate of TTEC, on or around May 28, 2024. Docket No. 41-1 at 2, 3, ¶¶ 3, 7.

Plaintiff responds that Ms. Baker worked for TTEC from 2021 to July 2024, citing Ms. Baker's declaration and paystubs in support. Docket No. 49 at 5. In her declaration, Ms. Baker states that she began working for TTEC in approximately July 2021. Docket No. 49-1 at 1, ¶ 2. Ms. Baker states that, around June or July 2024, she began working "in a department that was specific to a TXTAG project" and that, during that period, Ms. Baker's paystubs said "TTEC Government Solutions LLC." *Id.*, ¶ 4. Ms. Baker's paystub for the pay period of November 6 to November 19, 2023 was issued by "TTEC Services Corporation." Docket No. 49-2 at 1.

Thus, at the very least, Ms. Baker worked for TTEC from approximately July 2021 to May 28, 2024. Ms. Pfeifer does not address Ms. Baker's period of employment

12

with TTEC that preceded May 28, 2024.  *See generally* Docket No. 41-1.  Accordingly, the Court finds that Ms. Baker can assert claims against TTEC.

### 2.  *Whether Mutual Assent Exists*

Under Texas law,[3] "[c]ontracts require mutual assent to be enforceable."  *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007).  "Whether mutual assent exists as to a contract's subject matter and essential terms is an objective inquiry, turning on what the parties said and did, not on their subjective states of mind.  *StubHub, Inc. v. Ball*, 676 S.W.3d 193, 199 (Tex. App. 2023).

The Court finds that TTEC has satisfied its initial burden to show that TTEC and Ms. Vega mutually assented to arbitrate their claims.  Ms. Pfeifer, who submitted a declaration regarding Ms. Baker's employment with TTEC, has personal knowledge of TTEC's onboarding procedures.  *See* Docket No. 41-1 at 2, ¶ 5.  Upon an applicant receiving an offer of employment, Ms. Pfeifer states that TTEC sends a link to the applicant so that the applicant can complete a profile on Taleo.  Docket No. 41-1 at 3, ¶ 8.  The applicant creates a password to do so.  *Id.*  When an applicant signs the eSignature page, the applicant provides her full name and a unique identifier.  *Id.*, ¶ 9.  Upon the applicant signing, Taleo generates an eSignature timestamp that records the

---

[3] Both parties assume that Texas law governs the formation of the arbitration agreement.  *See* Docket No. 46 at 7; Docket No. 49 at 9.  Because Ms. Baker worked for TTEC from her home in Texas and completed the onboarding process in Texas, *see* Docket No. 49-1 at 2, ¶ 2, the Court will apply Texas law.  *See Armbruster,* 2021 WL 12344612, at *3.

documents signed, the IP address of the computer used to sign the document, and the date and time of signing.  *Id.* at 3-4, ¶ 10.

Plaintiff argues that TTEC has not met its burden because it has only produced an unsigned arbitration agreement that does not refer to Ms. Baker.  Docket No. 49 at 9.  Plaintiff notes that TTEC has failed to produce a copy of the eSignature page that Ms. Baker would have viewed in order to agree to the Arbitration Agreement.  *Id.*  Plaintiff further notes that the eSignature timestamp and Ms. Baker's Taleo account activity do not refer to the Arbitration Agreement.  *Id.* at 9-10.

Although TTEC does not attach the eSignature page, as TTEC did in its motions to compel arbitration of Ms. Alvarez and Ms. Baker's claims, Ms. Pfeifer attests that Ms. Baker would have been presented with the Arbitration Agreement upon logging back into her Taleo account after being hired.  Docket No. 41-1 at 3, ¶ 8.  Ms. Pfeifer states that all new employees must go through the onboarding process on Taleo, which includes reviewing and signing the Arbitration Agreement.  *Id.*  Thus, Ms. Baker could not have continued the hiring and onboarding process without reading and signing the Arbitration Agreement.  *Id.*  As part of that mandatory process, Ms. Baker had to certify that she read, understands, and agrees to the Arbitration Agreement.  *Id.*, ¶ 9.  Ms. Baker had to certify that, by accepting employment, she agreed to the terms and conditions of the Arbitration Agreement.  *Id.*  As part of the Taleo process, Ms. Baker had to certify the foregoing by signing with her unique identifier and full name.  *Id.*  The fact that a log of Ms. Baker's Taleo account activity does not include an entry for the time at which Ms. Baker purportedly agreed to the Arbitration Agreement does not raise a material dispute.  As Ms. Pfeifer explains, the Taleo account activity log includes

14

"an audit of the dates and times [Ms. Baker] created her profile and applied to each job." *Id.* at 2-3, ¶ 6. Such an activity log would therefore not necessarily track the time at which Ms. Baker signed the Arbitration Agreement. Similarly, the fact that eSignature timestamp does not refer specifically to the Arbitration Agreement does not dispute Ms. Pfeifer's explanation that the eSignature timestamp is generated when applicants certify that all information provided in their application is true and correct and agree to the Arbitration Agreement. *See id.* at 3-4, ¶¶ 9-10.

The evidence adduced by TTEC shows that Ms. Baker manifested her assent to the Arbitration Agreement by signing the eSignature page. Thus, the Court finds that TTEC has met its burden. *See Energy Transfer LP v. Moock*, 2025 WL 1559841, at *13 (Tex. App. June 3, 2025) (finding mutual assent existed based on, in part, an affidavit from defendant's Vice President of Human Resources who asserted that all new employees are required to complete the onboarding process, which includes signing the arbitration agreement through Taleo, and that the signed arbitration agreement was part of the employee's files); *Moncada v. DHI Mortg. Co., Ltd*., 714 F. Supp. 3d 645, 650 (D.S.C. 2023) (finding that there was mutual assent where defendant submitted an affidavit stating that plaintiff accessed Taleo by logging into his account, was presented with the arbitration agreement, and electronically signed it by typing his name) (applying South Carolina law).

Turning to whether plaintiff has carried her burden to dispute the existence of mutual assent, Ms. Baker states that she does "not recall ever signing or seeing any agreements or contents about arbitration with TTEC." Docket No. 49-1 at 2, ¶ 7. She also states that she is "confident" she did not the sign Arbitration Agreement that TTEC

15

attached to its motion to compel arbitration. *Id.*, ¶ 10. Ms. Baker states that she only recalls signing an offer letter through the Taleo portal and not the Arbitration Agreement. *Id.*, ¶ 11. These statements are insufficient to meet Ms. Baker's burden and rebut TTEC's showing of an enforceable arbitration agreement. "In a motion to compel arbitration, . . . however, Plaintiff may not use her own self-serving affidavit, with no other evidence, to create a fact question." *Rodriguez v. Gryphon Holdco, LLC*, 2023 WL 11833599, at *4 (W.D. Tex. Nov. 21, 2023). The only evidence submitted by Ms. Baker is her offer letter, which states that an arbitration agreement would be provided and must be signed before the start of Ms. Baker's employment and that, if Ms. Baker wished to review this agreement, she could do so by contacting her local Human Capital Representative. *See* Docket No. 49-3. The offer letter does not dispute that Ms. Baker agreed to the Arbitration Agreement through the Taleo portal.

Accordingly, the Court finds that Ms. Baker agreed to the arbitration clause.

### 3. Scope of the Arbitration Agreement

The Arbitration Agreement provides that, "[e]xcept as specifically excluded in this Agreement, this Agreement covers any and all disputes, past, present, or future, between TTEC and Employee." Docket No. 41-1 at 7-8. Ms. Baker does not contest that her claims are within the scope of the Arbitration Agreement. Moreover, the Court finds that Ms. Baker's claims do not fall within any of the disputes that are excluded by the Arbitration Agreement. *See id.* at 8. Accordingly, the Court finds that Ms. Baker's claims are covered by the Arbitration Agreement.

### 4. Whether the Arbitration Agreement is Unconscionable

16

Plaintiff contends that the Arbitration Agreement is procedurally and substantively unconscionable. Docket No. 49 at 11-14. The Court first addresses TTEC's argument that the claims of unconscionability should be addressed by the arbitrator and not the Court. *See* Docket No. 46 at 8.

The Arbitration Agreement contains the same delegation provision as noted in Ms. Vega's case. *See* Docket No. 41-1 at 6. Again, plaintiff does not challenge the delegation clause. Plaintiff argues that the Arbitration Agreement is unconscionable because, in the eSignature page, acceptance of an applicant's certification that information in her application is accurate is also considered acceptance of the Arbitration Agreement, which plaintiff claims is confusing and unfair. Docket No. 49 at 11. Plaintiff also argues that the Arbitration Agreement imposes severe limitations on discovery and that "TTEC apparently only gives employees two hours to review it." *Id.* at 12-14. None of these arguments address the validity of the delegation clause or TTEC's contention that the unconscionability arguments must be addressed by an arbitrator. *See generally id.* Therefore, the Court finds that plaintiff's challenges to the unconscionability of the arbitration agreement are for the arbitrator to decide.

### C. Motion for Leave to Amend Complaint

Plaintiff moves for leave to amend the complaint to substitute Ms. Vega and Ms. Baker as the named plaintiffs for Ms. Alvarez. Docket No. 52. The Court has granted TTEC's motion to compel Ms. Alvarez to arbitrate her claims. Docket No. 51 at 17-18. TTEC responds that amendment would be futile given that Ms. Baker and Ms. Vega are also subject the Arbitration Agreement, and like Ms. Alvarez, would not be appropriate representatives of the putative collective. Docket No. 56 at 5-6.

17

In the absence of futility, undue delay, bad faith or dilatory motive on the part of the plaintiff, leave to amend should be "freely given." *Foman v. Davis,* 371 U.S. 178, 182 (1962); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Because the Court finds that Ms. Baker and Ms. Vega are subject to the Arbitration Agreement, Ms. Baker and Ms. Vega lack "any personal interest in prosecuting this action in this Court on behalf of others who have yet to opt in" and cannot serve as the named plaintiffs. *See Dixon v. NBCUniversal Media, LLC*, 947 F. Supp. 2d 390, 406 (S.D.N.Y. 2013) (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. at 66, 73 (2013) ("While the FLSA authorizes an aggrieved employee to bring an action on behalf of himself and other employees similarly situated, the mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied.") (internal quotations and citation omitted)). Accordingly, granting plaintiff leave to amend the complaint to substitute Ms. Vega and Ms. Baker as the named plaintiffs would be futile and thus the Court will deny the motion.

### D. Administrative Closure

Plaintiff "renews the argument that the Court should reserve deciding arbitration issues in this case to step two of the conditional certification framework." Docket No. 49 at 6; Docket No. 57 at 4. Plaintiff contends that, because Ms. Baker and Ms. Vega have opted in, the case can move forward to the conditional certification stage with a named plaintiff. *See* Docket No. 49 at 8; Docket No. 57 at 6. Because the Court finds that Ms. Vega's and Ms. Baker's claims are subject to arbitration, the Court's prior holding that it

18

"will not decide whether conditional certification of the collective is appropriate until a named plaintiff is identified" remains pertinent. See Docket No. 51 at 16.

The Tenth Circuit has described administrative closure as being "the practical equivalent of a stay." *Quinn v. CGR,* 828 F.2d 1463, 1465 & n.2 (10th Cir. 1987). Thus, given that all claims in this case are subject to arbitration, the Court will administratively close this case pending resolution of the parties' claims in arbitration. *See Green v. Fishbone Safety Sols., Ltd.,* 303 F. Supp. 3d 1086, 1101 (D. Colo. 2018) ("it is standard practice in this district for courts to administratively close, rather than stay, cases pending resolution of the parties' claims in arbitration").

## V. CONCLUSION

Therefore, it is

**ORDERED** that Defendant's Motion to Compel Arbitration with Lamis Baker and to Dismiss Her From the Case Under Fed. R. Civ. P. 12(b)(6) [Docket No. 46] is **GRANTED**. It is further

**ORDERED** that Plaintiff's Motion for Leave to File First Amended Complaint to Add/Substitute Named Plaintiffs [Docket No. 52] is **DENIED**. It is further

**ORDERED** that Defendant's Motion to Compel Arbitration with Guadalupe Vega and to Dismiss Her From the Case Under Fed. R. Civ. P. 12(b)(6) [Docket No. 54] is **GRANTED**. It is further

**ORDERED** that Ms. Vega, Ms. Baker, and TTEC shall proceed to arbitrate their dispute according to the provisions of the arbitration agreement between them in accordance with this order. It is further

**ORDERED** that this case shall be administratively closed, subject to reopening by any party upon a showing of good cause, pursuant to D.C.COLO.LCivR 41.2. It is further

**ORDERED** that, not later than twenty days after the completion of the arbitration proceedings for Ms. Alvarez, Ms. Vega, and Ms. Baker, the parties shall file a status report advising the Court whether they believe the case should be reopened for good cause for any further proceedings in this Court or whether the case may be dismissed.

DATED February 9, 2026.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge